**TODD S. EAGAN, ESQ. (BAR NO. 207426)**
**EAGAN LAW CORPORATION**
401 Wilshire Boulevard, 12th Floor
Santa Monica, CA 90401
Ph: (310) 304-3302
teagan@eagan.law

**JAMES J. ROSEMERGY (MO. BAR NO. 50166)**
***To be admitted Pro Hac Vice***
**CAREY & DANIS LLC**
8235 Forsyth, Suite 1100
St. Louis, MO 63105
Ph: (314) 725-7700
jrosemergy@careydanis.com

Attorneys for Plaintiffs
SASHA KERKMANN HOOD, CARA BRAND, COURTNEY WALKER, and JOANNA VAN VLECK and the Putative Class

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SASHA KERKMANN HOOD, CARA BRAND, COURTNEY WALKER, and JOANNA VAN VLECK, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>PRIMAL NUTRITION, LLC, a Delaware limited liability company; and DOES 1 through 25, inclusive,<br><br>*Defendants.* | **Case No. _______________**<br><br>**CLASS ACTION COMPLAINT**<br>1. Violation of California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq. (California Subclass)<br>2. Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. (California Subclass)<br>3. Violation of California False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq. (California Subclass)<br>4. Breach of Express Warranty (Nationwide Class) |

5. Breach of Implied Warranty of Merchantability (Nationwide Class)
6. Unjust Enrichment (Nationwide Class, pleaded in the alternative)

**DEMAND FOR JURY TRIAL**

## I. NATURE OF THE ACTION

1. This is a consumer class action brought by Plaintiffs Sasha Kerkmann Hood, Cara Brand, Courtney Walker, and Joanna Van Vleck ("Plaintiffs"), individually and on behalf of all others similarly situated, against Defendant Primal Nutrition, LLC ("Primal" or "Defendant"), the maker of the Primal Kitchen® brand of condiments, sauces, and dressings, arising from Defendant's systematic mislabeling of avocado-oil-based food products.
2. This action concerns three Primal Kitchen products that were independently laboratory-tested and found to be compositionally inconsistent with authentic avocado oil: the "Avocado Oil and Vinegar Vinaigrette & Marinade," the "Italian Dressing & Marinade Made with Avocado Oil," and the "Real Mayonnaise Made with Avocado Oil" (collectively, the "Products"). Each Product identifies avocado oil as its sole declared edible oil ingredient. Defendant charges, and Plaintiffs and other consumers pay, a premium price for the Products because they are represented to contain avocado oil — a premium, better-for-you oil — as the only oil ingredient.
3. In July 2026, food scientists at the University of California, Davis published a peer-reviewed study finding that the vast majority of avocado-oil-labeled processed foods sold in the United States — including chips, mayonnaise, and salad dressings — do not contain the compositional profile of authentic avocado oil. Natalie Lopez-Alvarez et al., Authenticity of Avocado and Olive Oils Used as Ingredients in Commercially Processed Foods, 6 Applied Food Research 102389 (2026) (the "UC Davis Study" or

"Study").[1] The Study is the first peer-reviewed research to systematically test the authenticity of avocado oil and olive oil as used as ingredients within finished, commercially processed foods, as opposed to bottled oils sold on their own. The Study's peer-reviewed supplementary data — including Table S1 (product information, ingredient statement, package size, retail price, and purchase location for every product), Table S3 (the complete measured fatty acid profile of every sample), and Table S4 (the complete measured sterol profile of every sample) — report results at the level of each individual tested sample.

4. Using gas-chromatography analysis of fatty acid methyl esters ("FAMEs") and sterol profiles — measured against the internationally recognized Codex Alimentarius Standard for Named Vegetable Oils (CXS 210-1999) (the "Codex Standard") — the UC Davis Study found that 89% of all avocado-oil-labeled processed food products tested (48 of 54 samples) exhibited compositional markers inconsistent with authentic avocado oil, and instead were consistent with substitution or dilution using cheaper seed oils. Broken out by category, the Study found 93% of avocado-oil-labeled chip samples (26 of 28), 100% of avocado-oil-labeled salad dressing samples (12 of 12), and 71% of avocado-oil-labeled mayonnaise samples (10 of 14) to be compositionally inconsistent with authentic avocado oil.

5. The Study's published brand-attribution materials identify each of Defendant's three Products by brand and product name, and the Study tested two independently purchased production lots of each: the Avocado Oil and Vinegar Vinaigrette & Marinade (Sample Nos. 41 and 42), the Italian Dressing & Marinade Made with Avocado Oil (Sample Nos. 43 and 44), and the Real Mayonnaise Made with Avocado Oil (Sample Nos. 61 and 62). Every one of those six samples failed the Study's authenticity criteria. As set forth in detail below, each of Defendant's six samples exhibited between nine and eleven separate compositional markers falling outside the Codex Standard's ranges for authentic avocado oil — and falling outside those ranges

[1] The Study can be found at https://doi.org/10.1016/j.afres.2026.102389 (last accessed August 17, 2026.

even after application of the Study's deliberately generous 10% tolerance allowance — with concordant deviations across both the fatty acid and the sterol profiles. The Study's classification methodology treats as merely "borderline" a sample with no more than two marginal deviations; Defendant's samples exceeded that threshold by a factor of four to five.

6. The deviations were not random. Each of Defendant's six samples exhibited the identical signature the Study identified as diagnostic of substitution or dilution with lower-cost seed oils: depressed palmitoleic acid, depressed cis-vaccenic acid, elevated stearic acid, elevated campesterol, elevated stigmasterol, elevated $\Delta^7$-avenasterol, elevated $\Delta^7$-stigmastenol, and depressed β-sitosterol and clerosterol. As detailed below, the specific pattern of those deviations is affirmatively consistent with dilution using a seed oil of the sunflower or safflower family, and affirmatively inconsistent with canola or soybean oil as the principal added oil.

7. The UC Davis Study also conducted controlled laboratory experiments simulating commercial frying and emulsification — the processes used to manufacture chips, mayonnaise, and dressings — and found that such processing changes major fatty acid markers by well under one percentage point and does not account for the magnitude of the deviations observed in the commercial products tested. In other words, ordinary food processing does not explain why the oil fraction of Defendant's Products fails to match the chemical signature of authentic avocado oil; substitution or dilution of the declared oil is the far more likely explanation.

8. By labeling the Products as containing avocado oil as the sole declared oil ingredient, when in truth and in fact the oil fraction of the Products is inconsistent with authentic avocado oil and instead reflects substitution or dilution with cheaper seed oils, Defendant has violated federal and California food-labeling law, deceived reasonable consumers, and been unjustly enriched at Plaintiffs' and the Class's expense. Plaintiffs bring this action to remedy Defendant's unlawful, unfair, and fraudulent conduct, and to recover damages, restitution, and injunctive relief on behalf of themselves and the Class defined below.

## II. PARTIES

9. Plaintiff Sasha Kerkmann Hood is, and at all relevant times was, a resident and citizen of Rough and Ready, California. During the Class Period, Plaintiff Hood purchased Primal Kitchen Real Mayonnaise Made with Avocado Oil, Poppy Seed Dressing & Marinade Made with Avocado Oil, and Green Goddess Dressing & Marinade Made with Avocado Oil. In deciding to purchase these products, Plaintiff Hood read, saw, and reasonably relied upon Defendant's representation that each product contained avocado oil as its sole declared oil ingredient, and paid a price premium on the basis of that representation. Had Plaintiff Hood known that the oil fraction was inconsistent with authentic avocado oil, Plaintiff Hood would not have purchased the products, or would have paid significantly less for them.

10. Plaintiff Cara Brand is, and at all relevant times was, a resident and citizen of Studio City, California. During the Class Period, Plaintiff Brand purchased Primal Kitchen Real Mayonnaise Made with Avocado Oil. In deciding to purchase this product, Plaintiff Brand read, saw, and reasonably relied upon Defendant's representation that it contained avocado oil as its sole declared oil ingredient, and paid a price premium on the basis of that representation. Had Plaintiff Brand known that the oil fraction was inconsistent with authentic avocado oil, Plaintiff Brand would not have purchased the product, or would have paid significantly less for it.

11. Plaintiff Courtney Walker is, and at all relevant times was, a resident and citizen of Petaluma, California. During the Class Period, Plaintiff Walker purchased Primal Kitchen Real Mayonnaise Made with Avocado Oil and Creamy Sriracha Dipping Sauce Made with Avocado Oil. In deciding to purchase these products, Plaintiff Walker read, saw, and reasonably relied upon Defendant's representation that each product contained avocado oil as its sole declared oil ingredient, and paid a price premium on the basis of that representation. Had Plaintiff Walker known that the oil fraction was inconsistent with authentic avocado oil, Plaintiff Walker would not have purchased the products, or would have paid significantly less for them.

12. Plaintiff Joanna Van Vleck is, and at all relevant times was, a resident and citizen of Newnan, Georgia. During the Class Period, Plaintiff Van Vleck purchased Primal Kitchen Real Mayonnaise Made with Avocado Oil, Ranch Dressing & Marinade Made with Avocado Oil, Caesar Dressing & Marinade Made with Avocado Oil, and Original Buffalo Sauce Made with Avocado Oil. In deciding to purchase these products, Plaintiff Van Vleck read, saw, and reasonably relied upon Defendant's representation that each product contained avocado oil as its sole declared oil ingredient, and paid a price premium on the basis of that representation. Had Plaintiff Van Vleck known that the oil fraction was inconsistent with authentic avocado oil, Plaintiff Van Vleck would not have purchased the products, or would have paid significantly less for them.

13. Of the products purchased by Plaintiffs, the Real Mayonnaise Made with Avocado Oil is one of the three Products directly tested by the UC Davis Study, and it was found to be compositionally inconsistent with authentic avocado oil in both tested production lots. See ¶¶ 48–54, *infra*. The other Primal Kitchen products purchased by Plaintiffs — the Poppy Seed, Green Goddess, Creamy Sriracha, Ranch, Caesar, and Buffalo Sauce products — were not among the specific samples tested by the Study. As alleged in ¶ 62, *infra*, however, each of those products is manufactured by Defendant, bears the identical "Made with Avocado Oil" sole-oil representation, is marketed as part of the same Primal Kitchen avocado-oil product line, and, upon information and belief, is formulated using avocado oil sourced through the same supply chain as the tested Products. Plaintiffs expressly reserve the right to contest the purity and authenticity of those additional products based upon the tested results and information developed in discovery.

14. Plaintiffs would purchase the Products again in the future if Plaintiffs could be assured that the Products' labeling claims were true, and thus, Plaintiffs are threatened with continuing harm and lack an adequate remedy at law absent injunctive relief.

15. Defendant Primal Nutrition, LLC is a Delaware limited liability company that, upon information and belief, manufactures, labels, markets, advertises, and sells the

Products under the Primal Kitchen® brand throughout the United States, including in this District. Primal Kitchen operates its business and product-development operations from Oxnard, California, within this District, and is a wholly owned subsidiary of Kraft Heinz Foods Company, which acquired Primal Nutrition, LLC in January 2019.

16. The true names and capacities of Defendants sued as DOES 1 through 25 are presently unknown to Plaintiffs, who therefore sue these Defendants by fictitious names. Plaintiffs are informed and believe, and on that basis allege, that each DOE Defendant is in some manner responsible for the conduct alleged herein. Plaintiffs will amend this Complaint to state the true names and capacities of the DOE Defendants when ascertained.

## III. JURISDICTION AND VENUE

17. This Court has subject-matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because: (a) the proposed Class consists of more than 100 members; (b) at least one member of the proposed Class — including Plaintiff Van Vleck, a citizen of Georgia — is a citizen of a state different from Defendant's state of citizenship; and (c) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, in the aggregate across the Class.

18. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in California and in this District, including operating Primal Kitchen's headquarters and business operations in Oxnard, California, and because Defendant purposefully directed the marketing, distribution, and sale of the Products to consumers in this District, including Plaintiffs Hood, Brand, and Walker, each of whom purchased in California.

19. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including Defendant's development, labeling, and marketing of the Products from its Oxnard, California headquarters, and because Defendant is subject to personal jurisdiction in this District.

# IV. FACTUAL ALLEGATIONS

***The Premium Market for Avocado Oil and the Governing Labeling Requirements***

20. Avocado oil is widely marketed to health-conscious consumers as a premium cooking oil, valued for its high concentration of monounsaturated fats and its perceived nutritional advantages over conventional seed and vegetable oils.

21. Because avocado oil is significantly more expensive to produce and source than seed oils such as soybean, canola, sunflower, or safflower oil, food and beverage manufacturers — including Defendant — have increasingly marketed processed foods such as chips, mayonnaise, and salad dressings as being made with avocado oil, in order to command a substantial price premium over conventional, seed-oil-based counterparts.

22. And the premium is indeed substantial. A recent Forbes article found that avocado oil products command a more than 500% premium versus comparable items made with other oils. By way of example, Forbes notes that Walmart charges $.10/ounce for traditional mayonnaise, while Avocado oil mayo sold by Primal Kitchen is priced at $.65/ounce.[2]

23. A growing segment of consumers actively seeks to avoid seed oils in their diets. For those consumers, the presence of an undisclosed seed oil is not a matter of degree or grade; it defeats the entire purpose of the purchase. Defendant markets the Products directly to that consumer segment.

24. Consumers reasonably rely on ingredient declarations required by law to reflect the true and accurate composition of the food they purchase. Under 21 C.F.R. § 101.4(a)(1), food ingredients generally must be declared by their common or usual name in descending order of predominance. Under 21 C.F.R. § 101.4(b)(14), when fat or oil constitutes the predominant ingredient of a food — as it does in mayonnaise and oil-based salad dressings — manufacturers may not use generic "and/or" disclosures

[2] Forbes, "The Avocado Oil Boom Has A Fraud Problem, New Study Suggests" https://www.forbes.com/sites/maryroeloffs/2026/07/15/the-avocado-oil-boom-has-a-fraud-problem-new-study-suggests/ (last accessed August 17, 2026)

or list an oil that is not actually present; the specific oil or oils used must be accurately and specifically declared.

25. Consumers have no practical means of independently verifying which oil is actually present in a finished, processed food. Detecting substitution requires solvent extraction of the lipid fraction from the food matrix followed by gas-chromatographic analysis of fatty acid methyl esters and sterols against international reference standards — laboratory work that no ordinary consumer can perform. Refined avocado oil and refined seed oils are also similar in color, texture, and flavor, and refined avocado oil is marketed precisely for its neutral taste. A consumer therefore cannot detect the substitution alleged here by taste, appearance, or use. That undetectability is what makes the deception both effective and durable, and it forecloses any suggestion that consumers were not harmed because they noticed no difference in the product's performance. The bargain consumers struck was for a specific ingredient, and it is the absence of that ingredient — not any difference in flavor — that constitutes the injury.

***<u>Adulteration of Avocado Oil Was a Known and Documented Industry Problem</u>***

26. While not known commonly to consumers, the economic adulteration of avocado oil is not a newly discovered phenomenon in the food industry. It has been the subject of published, peer-reviewed scientific literature for years, and was known or reasonably knowable to any sophisticated manufacturer sourcing bulk avocado oil.

27. In 2020, researchers at UC Davis published the first report on the quality and purity of avocado oil sold in the United States, finding that a substantial majority of the bottled avocado oil products tested were either oxidized or adulterated with other oils.[3] That study received widespread national press coverage.

28. In 2022, the same laboratory published research identifying cis-vaccenic acid (C18:1 (n-7)) as a specific analytical marker capable of detecting seed oil adulteration in

---

[3] Hilary S. Green & Selina C. Wang, *First Report on Quality and Purity Evaluations of Avocado Oil Sold in the US*, 116 Food Control 107328 (2020).

avocado oil.[4] In 2023, the same laboratory published further findings on the purity and quality of private-label avocado oil.[5]

29. Defendant is a sophisticated food manufacturer, owned since 2019 by one of the largest food companies in the world, with access to analytical testing capability, supplier-qualification programs, and quality-control resources. In light of the published and publicized history of avocado oil adulteration, Defendant knew or should have known of the substantial risk that bulk avocado oil purchased for use in the Products would be diluted or substituted, and had both the means and the obligation to verify the authenticity of the oil it declared on its labels. Defendant either failed to conduct such verification or conducted it and sold the Products anyway.

***<u>Defendant's Products and Representations</u>***

30. Defendant manufactures and sells, among other products, the following avocado-oil-labeled Products[6] that were tested in The Study.  Note that the labeling all includes front-of-package "Made with Avocado Oil" representations:

[4] Hilary S. Green & Selina C. Wang, *Cis-Vaccenic Acid: New Marker to Detect Seed Oil Adulteration in Avocado Oil*, 1 Food Chemistry Advances 100107 (2022).

[5] Hilary S. Green & Selina C. Wang, *Purity and Quality of Private Labelled Avocado Oil*, 152 Food Control 109837 (2023).

[6] Screenshots in this paragraph and throughout this Complaint are from https://www.primalkitchen.com/ unless otherwise noted (as of August 17, 2026).

a. Avocado Oil and Vinegar Vinaigrette & Marinade:



b. Italian Dressing & Marinade Made with Avocado Oil:



c. Real Mayonnaise Made with Avocado Oil:




31. The marketing message is not just that the products *contain* avocado oil, however – all products are represented to include *only* avocado oil to the exclusion of other oils. For example, each Product's ingredient statement identifies avocado oil as the sole

declared oil ingredient. The UC Davis Study independently recorded the complete ingredient statement of each Product it tested. As reported in Table S1 of the Study's Supplementary Tables,[7] the ingredient statements of Defendant's tested Products list, apart from avocado oil, only the following non-oil ingredients:

a. Avocado Oil and Vinegar Vinaigrette & Marinade (Sample Nos. 41–42): water, organic red wine vinegar, organic stone ground mustard (water, organic mustard seeds, organic vinegar, salt, organic spices), sea salt, garlic, organic lemon juice concentrate, organic black pepper, organic celery seed, organic mustard flour, organic gum acacia, organic guar gum, citric acid.

b. Italian Dressing & Marinade Made with Avocado Oil (Sample Nos. 43–44): water, organic red wine vinegar, sea salt, contains less than 2% of organic lemon juice concentrate*, onion powder, organic black pepper, dried basil, garlic powder, organic dried oregano, organic konjac root fiber, organic crushed red chile peppers, organic dried thyme..

c. Real Mayonnaise Made with Avocado Oil (Sample Nos. 61–62): organic vinegar, organic eggs, organic egg yolks, salt, rosemary extract, and mustard seed extract.

32. No ingredient statement for any of the Products discloses the presence of soybean oil, canola oil, sunflower oil, safflower oil, corn oil, or any other edible oil apart from avocado oil. No ingredient statement contains any qualifying or hedging disclosure — such as "and/or," "may contain," or a reference to trace or incidental ingredients — that would put a reasonable consumer on notice that an oil other than avocado oil might be present.

33. Moreover, the Products all explicitly disclaim the presence of soy or canola oil on their labels:

---

[7] Current ingredient listings on https://www.primalkitchen.com/ may contain minor, non-substantive differences as relevant to this litigation. The presence of any oil other than avocado oil is not disclosed in any available form.

a. Avocado Oil and Vinegar Vinaigrette & Marinade:




b. Italian Dressing & Marinade Made with Avocado Oil:



c. Real Mayonnaise Made with Avocado Oil:




34. Defendant's marketing supports the labeling representations and reinforces the importance of using only avocado oil, including claims on Defendant's website describing the brand's commitment to using avocado oil, generally touting avoidance of seed-based oils and justifying the premium price commanded by avocado-based oils. For example, the following representations can be found on Defendant's website, drawing a significant distinction between avocado oil and other oils:

a.

FREQUENTLY ASKED QUESTIONS

## You Might Be Wondering...

### What makes Primal Kitchen Mayo different from regular mayo?

Our mayo is made with avocado oil instead of the canola or soybean oils used in traditional mayo. We chose avocado oil for its good fats and neutral flavor.

b.

PRIMAL KITCHEN

## How Does Avocado Oil Compare to Seed Oils?

First and foremost, **avocado oil is NOT a seed oil.** Avocado oil is derived from the whole fruit. (The same goes for olive oil, by the way.)

One reason that canola oil, peanut oil, and other seed oils are so popular with food manufacturers is that thanks to how they are processed, they have a relatively neutral taste and a high smoke point. But guess what? **Avocado oil also has a neutral flavor that makes it perfect for all sorts of cooking applications, with a smoke point on par with or higher than common seed oils!**

Avocado oil is also prized for its monounsaturated fat content. That's why we like to call avocado oil a source of **good fats we love**. Approximately 70% of the fatty acids in avocado oil are of the much-lauded **monounsaturated** type with around 17% polyunsaturated, similar to olive oil.[9]

c.

PRIMAL KITCHEN

So what's the problem? Seed oils like soybean, sunflower, corn, and cottonseed are predominantly polyunsaturated fat, much of which is linoleic acid, an omega-6 fatty acid. We need omega-6s in our diets, but some health experts have become concerned about the increase in omega-6 fatty acid intake in recent decades and whether a diet that contains too much omega-6 and too little omega-3 and monounsaturated fat is suboptimal.[4,5,6,7,8]

While maintaining the right balance of omega-6 and omega-3 fatty acids in the diet is important, it's essential to keep the bigger picture in mind. Since seed oils are in many ultra-processed foods, reducing your intake of one will generally reduce your intake of the other. As registered dietitian Brynn Medlock, RD, explains, "Many people are making an effort to eat more nutrient-dense, whole foods like meat, vegetables, dairy, whole grains, and fruit while reducing their intake of ultra-processed foods and, consequently, seed oils. This shift reflects a growing desire to return to the basics, and we see consumers leaning on their own intuition about what's best for themselves and their families—a movement that has sparked a positive trend toward real, wholesome food."

35. Having proselytized about the importance of using avocado oil to the exclusion of other oils, Defendant then leans into the importance of purity of avocado oil as part of marketing its own products:

a.


PRIMAL KITCHEN
QUALITY & PURITY TESTED
About Our Avocado Oil
PRIMAL KITCHEN
PURE AVOCADO OIL
We're Committed to Ingredient Integrity
At Primal Kitchen, we only use quality ingredients you can trust for you and your family. When it comes to our bottled and spray avocado oil, we know that purity and quality are top priorities. As avocado oil industry leaders, we hold ourselves to the highest standards.

b.


PRIMAL KITCHEN
Frequently Asked Questions
How do you know your Avocado Oil is pure?
At Primal Kitchen, avocado oil purity has a straightforward definition: "pure" means that our avocado oil is never adulterated with other oils. That is our promise to you: Primal Kitchen® Avocado Oil is derived solely from avocados. It's pure and simple.
How do we know? First, supply chain traceability: we can trace our avocado oil from country of origin to the store shelf. Second, our avocado oil undergoes extensive testing to ensure that our oil is pure and high quality.

36. Defendant has publicly reaffirmed the same representation after the UC Davis Study was published. Following publication, Primal Kitchen's president, Dan Stangler, publicly vouched for the products' avocado-oil authenticity, stating:

> "We maintain rigorous quality standards, including requiring certificates of analysis for every batch and ongoing testing from our suppliers to verify the purity and quality of our avocado oil, … Primal Kitchen uses pure avocado oil in our products and does not blend with other seed oils."[8]

37. Notably, those statements did not deny the compositional results reported in the Study; rather, they described Defendant's sourcing and quality-control processes. As such, they both reaffirm the affirmations of fact on which Plaintiffs relied and confirm that Defendant possessed the analytical means and quality-control systems that make the mismatch between the Products' labeled and actual oil composition a matter Defendant knew or reasonably should have known.

38. Stangler's representations also underscore the materiality of the avocado oil representations that are a core component of Defendant's overall marketing message, and that he is well-aware that its customers expect pure, unadulterated avocado oil when buying its products, consistent with its representations.

39. Primal Kitchen founder Mark Sisson is likewise fully aware of the importance of purity to consumers when it comes to avocado oil products; in a post on social media platform X (formerly Twitter) on August 10, 2026, Sisson confirms that, "…I know firsthand how important 100% pure, unblended avocado oil is to this community. Primal Kitchen uses 100% pure avocado oil in our products -- never blended with seed oils."[9]

***The UC Davis Study's Design and Findings***

---

[8] "100% Pure Avocado Oil May Not Be As Pure As Companies Advertise, Study Finds." https://dailycaller.com/2026/08/11/uc-davis-study-avocado-oil-products-fail-testing-cheap-oils-primal-kitchen-chosen-foods-kraft-heinz/ (last accessed August 16, 2026).

[9] *See* https://x.com/Mark_Sisson/status/2086962524210229441

40. The UC Davis Study evaluated 74 commercially processed chips, mayonnaise, and salad dressing products purchased from retail and online sources in California in 2025 and 2026, each of which declared avocado oil or olive oil as its sole edible oil ingredient. Two separate production lots of each product were purchased and analyzed, with each lot tested in duplicate. The Study additionally analyzed a set of conventional vegetable-oil products as compositional comparators.

41. Researchers extracted the oil fraction from each product and analyzed its FAME profile and its sterol profile by gas chromatography with flame ionization detection, then compared the results against the compositional ranges for authentic avocado oil and olive oil set out in the Codex Standard (CXS 210-1999) and the Codex Standard for Olive Oils and Olive Pomace Oils (CXS 33-1981).

42. The Study's classification methodology was deliberately conservative and favorable to manufacturers. To account for analytical uncertainty, biological variability, and potential processing influences, a deviation limited to a single fatty acid or sterol marker, and not exceeding 10% beyond the established Codex limit, was disregarded entirely and the sample was treated as consistent. A sample with no more than two markers marginally exceeding that 10% allowance, without concordant deviations elsewhere, was treated as merely "borderline." Only samples exhibiting multiple deviations, or patterns truly inconsistent with authentic reference profiles, were classified as inconsistent.

43. Of the 54 avocado-oil-labeled samples in the Study, 48 — or 89% — were classified as compositionally inconsistent with authentic avocado oil. By category, the Study reported the following:

   a. Chips: 26 of 28 samples (93%) inconsistent with authentic avocado oil;
   b. Salad dressings: 12 of 12 samples (100%) inconsistent with authentic avocado oil; and
   c. Mayonnaise: 10 of 14 samples (71%) inconsistent with authentic avocado oil.

44. By contrast, the Study found that olive-oil-labeled products in the same categories were overwhelmingly consistent with authentic olive oil — 90% of olive oil chips and

100% of olive oil dressings and mayonnaise. Because the olive-oil-labeled products were subjected to identical extraction and analytical procedures, in identical food matrices, the widespread inconsistency observed among avocado-oil-labeled products cannot be attributed to testing artifacts, to ordinary manufacturing variability, or to limitations inherent in recovering oil from processed foods.

45. The Study found that samples classified as inconsistent with authentic avocado oil consistently exhibited reduced levels of palmitic acid (C16:0), palmitoleic acid (C16:1), and cis-vaccenic acid (C18:1 (n-7)), together with elevated levels of stearic acid (C18:0), campesterol, stigmasterol, and $\Delta^7$-avenasterol — a chemical signature the Study's authors identified as characteristic of substitution or dilution with lower-cost vegetable oils rather than authentic avocado oil.

46. The Study specifically identified cis-vaccenic acid as a strong discriminatory marker for avocado oil authenticity: samples classified as consistent with authentic avocado oil had a mean cis-vaccenic acid content of 5.3% ± 1.0% of total fatty acids, whereas inconsistent samples had a mean of only 1.7% ± 0.5% — a range aligning with typical vegetable oil profiles ($p < 0.001$).

47. The Study further found that retail price was not a reliable indicator of authenticity: products labeled with avocado oil commanded a price premium over vegetable-oil counterparts regardless of whether their oil fraction was actually consistent with authentic avocado oil, meaning that consumers could not protect themselves from adulteration by paying a higher price.

***<u>The Study's Sample-Specific Findings as to Defendant's Products</u>***

48. The Study's published brand-attribution materials identify the following Primal Kitchen products (two independently collected production lots of each) among the avocado-oil-labeled dressing and mayonnaise samples tested: Avocado Oil and Vinegar Vinaigrette & Marinade (Sample Nos. 41–42); Italian Dressing & Marinade Made with Avocado Oil (Sample Nos. 43–44); and Real Mayonnaise Made with Avocado Oil (Sample Nos. 61–62). Table S1 of the Supplementary Tables

independently confirms the category, declared oil, complete ingredient statement, package size, retail price, and purchase location for each of these six samples, and records that a lot code was captured for each. None of the six was classified as consistent with authentic avocado oil.

49. Because the Study reported that zero of the twelve avocado-oil-labeled salad dressing samples were compositionally consistent with authentic avocado oil, and because Sample Nos. 41, 42, 43, and 44 are four of those twelve samples, all four of Defendant's tested salad dressing lots necessarily were classified as compositionally inconsistent with authentic avocado oil.

50. The measured values reported in Tables S3 and S4 of the Supplementary Tables independently confirm that result for all six of Defendant's samples. The table below sets forth, for each of Defendant's six samples, the measured value of each marker relevant to the authenticity analysis (i.e., the Codex range). Values are expressed as a percentage of total identified fatty acids or total sterols, as applicable:

| Marker | Codex range (authentic avocado oil) | No. 41 | No. 42 | No. 43 | No. 44 | No. 61 | No. 62 |
|---|---|---|---|---|---|---|---|
| **Palmitic acid (C16:0)** | 11.0–26.0 | 9.2 | 10.2* | 10.2* | 8.9 | 8.9 | 8.6 |
| **Palmitoleic acid (C16:1)** | 4.0–17.1 | 2.0 | 3.0 | 2.6 | 1.8 | 1.7 | 1.1 |
| **Stearic acid (C18:0)** | 0.1–1.3 | 2.2 | 2.1 | 2.0 | 2.3 | 2.3 | 2.5 |
| **α-Linolenic acid (C18:3)** | 0.5–2.1 | 0.4 | 0.4 | 0.4 | 0.4 | 0.4 | 0.4 |
| **Behenic acid (C22:0)** | ND–0.5 | 0.6 | 0.5* | 0.5* | 0.6 | 0.5* | 0.5* |
| **Campesterol** | 4.0–8.3 | 9.8 | 10.4 | 11.3 | 9.7 | 9.8 | 10.5 |
| **Stigmasterol** | 0.3–2.0 | 5.8 | 5.8 | 5.8 | 5.7 | 5.2 | 5.6 |
| **Clerosterol** | 1.0–2.5 | 0.7 | 0.8 | 0.8 | 0.7 | 0.5 | 0.5 |
| **β-Sitosterol** | 79.0–93.4 | 67.9 | 67.9 | 69.8 | 67.9 | 69.4 | 66.5 |

| Marker | Codex range (authentic avocado oil) | No. 41 | No. 42 | No. 43 | No. 44 | No. 61 | No. 62 |
|---|---|---|---|---|---|---|---|
| **$\Delta^7$-Stigmastenol** | ND–1.5 | 6.0 | 5.7 | 5.5 | 5.9 | 6.5 | 7.2 |
| **$\Delta^7$-Avenasterol** | ND–1.5 | 2.9 | 2.6 | 2.4 | 2.9 | 2.7 | 2.7 |
| **Cis-vaccenic acid (C18:1 n-7)** | Not in Codex[10] | 2.0 | 2.3 | 2.2 | 1.9 | 1.9 | 1.7 |

** Value within, or within the Study's 10% tolerance allowance of, the Codex range for that marker in that sample; every other value in the table falls outside the Codex range even after application of that allowance.*

51. Applying the Study's own classification criteria — including its 10% tolerance allowance — to the measured values reported in Tables S3 and S4, each of Defendant's six samples exhibited multiple, concordant deviations across both the fatty acid profile and the sterol profile, as follows: Sample No. 41, eleven markers outside the Codex ranges; Sample No. 42, nine markers; Sample No. 43, nine markers; Sample No. 44, eleven markers; Sample No. 61, ten markers; and Sample No. 62, ten markers. Each sample therefore falls far outside not only the "consistent" classification but also the "borderline" classification, which the Study reserved for samples with no more than two marginal deviations.

52. Every one of Defendant's six samples deviated in the same direction on the same markers. Palmitoleic acid — which authentic avocado oil contains at 4.0% to 17.1% of total fatty acids — was measured at between 1.1% and 3.0% in Defendant's samples, in every instance below the Codex minimum. Stearic acid, which authentic avocado oil contains at no more than 1.3%, was measured at 2.0% to 2.5% — up to roughly double the permissible maximum — in every sample. Stigmasterol, which authentic avocado oil contains at 0.3% to 2.0% of total sterols, was measured at 5.2%

[10] Consistent samples of this marker reported findings of 5.3% ± 1.0.

to 5.8% — nearly triple the permissible maximum — in every sample. $\Delta^7$-Stigmastenol, which authentic avocado oil contains at no more than 1.5% of total sterols, was measured at 5.5% to 7.2% — roughly four to nearly five times the permissible maximum — in every sample.

53. Defendant's samples likewise failed the Study's targeted discriminatory marker. Cis-vaccenic acid was measured at between 1.7% and 2.3% of total fatty acids across Defendant's six samples. Those values fall squarely within the 1.7% ± 0.5% mean the Study reported for samples inconsistent with authentic avocado oil, and far below the 5.3% ± 1.0% mean reported for consistent samples.

54. The pattern was consistent across both independently purchased lots of each Product, and across all three Products, spanning two different product categories and two different manufacturing processes. The deviations were therefore not confined to a single lot, a single production run, or a single formulation.

***Innocent Explanations Are Foreclosed***

55. To rule out the possibility that ordinary food processing could explain the observed deviations, the Study's authors conducted controlled laboratory experiments frying potato and tortilla chips in pure avocado oil and preparing model mayonnaise emulsified with pure avocado oil, then re-measured the extracted oil's fatty acid and sterol profile. Frying changed major fatty acid markers by no more than approximately 0.6 percentage points, and emulsification changed fatty acid markers by no more than approximately 0.3 percentage points.

56. Those margins cannot begin to account for the deviations measured in Defendant's Products. Emulsification is the only relevant processing step for mayonnaise and salad dressing, and the Study demonstrated that emulsification and short-term refrigerated storage left cis-vaccenic acid entirely unchanged and altered sterol values by no more than 0.5 percentage points. The Study specifically noted that clerosterol — a sterol for which avocado-labeled mayonnaise samples fell below the Codex minimum — was unaffected by emulsification, confirming that the inconsistency was not caused by

formulation processing. Defendant's samples measured clerosterol at 0.5% to 0.8%, against a Codex minimum of 1.0%.

57. Nor can the deviations be attributed to natural biological variation in avocado cultivar, growing region, or maturity. The Codex Standard's compositional ranges are themselves designed to encompass the expected natural variability of authentic avocado oil, and the Study layered an additional 10% tolerance on top of those ranges. Defendant's samples fell outside the ranges even after that additional allowance, on nine to eleven markers simultaneously, in a coordinated pattern.

58. Nor can the results be dismissed as anomalies confined to two isolated lots. The Study tested two independently purchased lots of each Product, obtained from different purchase channels on different occasions, and every lot of every Product failed. Where a manufacturer's declared ingredient is absent or diluted across independently sourced lots of three separate products in two separate categories, the reasonable inference is a supply-chain or formulation practice rather than a random deviation.

***Defendant Charged a Price Premium***

59. Defendant sells the Products at a substantial price premium compared to functionally similar products made with conventional vegetable or seed oils, capitalizing on consumer willingness to pay more for avocado oil's perceived health benefits and for the avoidance of seed oils.

60. The Study's own retail price data, reported in Table S1 and summarized in Table 1 of the Study, demonstrates the premium. Defendant's Avocado Oil and Vinegar Vinaigrette & Marinade was purchased at $8.99 for an eight-ounce bottle — approximately $1.12 per ounce — which is the highest per-ounce price of any avocado-oil-labeled salad dressing in the entire Study. Defendant's Italian Dressing & Marinade was purchased at $8.99 and $6.89 for eight-ounce bottles, and Defendant's Real Mayonnaise at $9.99 for twelve ounces and $12.99 for fifteen ounces — approximately $0.83 to $0.87 per ounce, against a low of $0.24 per ounce for the vegetable-oil mayonnaise comparators the Study analyzed.

61. Consumers who paid Defendant's premium did not receive what they paid for. The Study's data confirms that price provided consumers no protection: within the mayonnaise category, the only samples the Study classified as compositionally consistent with authentic avocado oil were products from a different brand, and consumers of Defendant's Products paid a premium over conventional products for an oil fraction that was not what the label declared.

***The Other Avocado-Oil Products Purchased by Plaintiffs***

62. In addition to the three Products that were tested in The Study, Defendant manufactures and sells numerous other products bearing the same "Made with Avocado Oil" representation, including the Poppy Seed, Green Goddess, Creamy Sriracha, Ranch, Caesar, and Buffalo Sauce products purchased by Plaintiffs Hood, Walker, and Van Vleck. Those additional products were not among the specific samples analyzed in the Study, and Plaintiffs do not allege that they have been independently laboratory-tested. However, each such product identifies avocado oil as the sole declared oil ingredient, is marketed under the same Primal Kitchen brand and the same avocado-oil, seed-oil-free positioning as the tested Products, and, upon information and belief, is formulated using avocado oil sourced through the same supply chain as the tested Products. Because proof of systemic inconsistency in Defendant's tested avocado-oil products — spanning two distinct product categories and reflecting concordant deviations across multiple independently purchased production lots — is probative of Defendant's sourcing and formulation practices for its avocado-oil product line as a whole, Plaintiffs expressly reserve the right to contest the purity and authenticity of these additional products, and to seek to expand the definition of the Products and the Class, based upon the tested results and information developed through independent testing or discovery. The claims asserted herein are pleaded as to the tested Products.

***Plaintiffs' Reliance and Injury***

63. Plaintiffs and the Class read and reasonably relied upon Defendant's representations that the Products they purchased contained avocado oil as the sole oil ingredient. Plaintiffs and the Class reasonably understood these representations to mean that the Products' oil fraction was, in fact, composed of authentic avocado oil, and Plaintiffs paid a price premium for the Products on that basis.

64. Had Defendant disclosed that the Products' oil fraction was inconsistent with authentic avocado oil and instead reflective of undisclosed substitution or dilution with cheaper seed oils, Plaintiffs would not have purchased the Products, or would have paid substantially less for them. Plaintiffs did not receive the benefit of their bargain and suffered economic injury in the amount of the premium they paid for avocado-oil-labeled Products that did not, in fact, contain the represented ingredient to the extent claimed.

## V. CLASS ACTION ALLEGATIONS

65. Plaintiffs bring this action on behalf of themselves and all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), and seek certification of the following Class and Subclass:

   a. Nationwide Class: All persons in the United States who purchased the Products for personal, family, or household use during the applicable statute-of-limitations period preceding the filing of this action through the date of class certification (the "Class Period").

   b. California Subclass: All members of the Nationwide Class who purchased the Products in the State of California during the Class Period.

66. Excluded from the Class and Subclass are: (a) Defendant, its officers, directors, employees, agents, affiliates, and any entity in which Defendant has a controlling interest; (b) the judge and court personnel assigned to this case and their immediate family members; and (c) any person who timely and validly opts out of the Class.

67. Each Plaintiff purchased the Real Mayonnaise Made with Avocado Oil, one of the three tested Products, and each was found compositionally inconsistent with authentic avocado oil in both tested lots. The Avocado Oil and Vinegar Vinaigrette & Marinade

and the Italian Dressing & Marinade bear the identical sole-avocado-oil representation, are the same category of premium avocado-oil dressing and condiment, and were likewise tested and found inconsistent in both lots. Plaintiffs' claims as to all three Products therefore present the same misrepresentation, the same governing legal standards, and the same theory of injury, and Plaintiffs are adequate representatives of purchasers of each of the three substantially similar Products.

68. Numerosity (Fed. R. Civ. P. 23(a)(1)): The members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, Defendant has sold hundreds of thousands, if not millions, of units of the Products to consumers throughout the United States during the Class Period. The precise number of Class members can be readily determined from Defendant's sales and distribution records.

69. Commonality (Fed. R. Civ. P. 23(a)(2)): Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual members, including, without limitation:

a. whether the Products' oil fraction is compositionally consistent with authentic avocado oil;
b. whether the Products contain one or more undisclosed oils other than avocado oil;
c. whether Defendant's representation that the Products contain avocado oil as the sole oil ingredient is false or misleading;
d. whether Defendant knew or should have known that the Products did not contain avocado oil as the sole oil ingredient but failed to disclose that to Plaintiffs and the Class;
e. whether Defendant's conduct violates the statutes and common-law doctrines invoked herein;
f. whether Defendant knew or should have known that the Products' labeling was false or misleading; and
g. whether Plaintiffs and the Class are entitled to damages, restitution, and/or injunctive relief, and in what amount or form.

70. Typicality (Fed. R. Civ. P. 23(a)(3)): Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all Class members, purchased one or more of the Products during the Class Period in reliance on Defendant's avocado-oil representations and suffered the same type of economic injury.

71. Adequacy (Fed. R. Civ. P. 23(a)(4)): Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel experienced in complex consumer class action and food-labeling litigation, and Plaintiffs have no interests antagonistic to those of the Class.

72. Rule 23(b)(2): Defendant has acted or refused to act on grounds generally applicable to the Class, making final injunctive relief appropriate with respect to the Class as a whole, including an order requiring Defendant to cease its false and misleading labeling practices and to accurately disclose the Products' actual oil composition.

73. Rule 23(b)(3): Common questions of law and fact predominate over any individual questions, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, given, among other things, the relatively modest individual damages at stake compared to the burden and expense of individual litigation.

## VI. CAUSES OF ACTION

### COUNT I

### Violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.

*(On Behalf of Plaintiffs Hood, Brand, and Walker, and the California Subclass)*

74. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

75. The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and Plaintiffs' and Class members' purchases of the Products are "transactions" within the meaning of Cal. Civ. Code § 1761(e). Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c).

76. By labeling and marketing the Products as containing avocado oil as the sole declared oil ingredient when the Products' oil fraction is inconsistent with authentic avocado oil, Defendant violated, at minimum:
    a. Cal. Civ. Code § 1770(a)(5) (representing that goods have characteristics or ingredients they do not have),
    b. Cal. Civ. Code § 1770(a)(7) (representing that goods are of a particular standard, quality, or grade when they are of another),
    c. Cal. Civ. Code § 1770(a)(9) (advertising goods with intent not to sell them as advertised), and
    d. Cal. Civ. Code § 1770(a)(16) (representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not).
77. Defendant's representations were material to Plaintiffs' and Class members' purchasing decisions, and Plaintiffs and Class members reasonably relied on those representations in deciding to purchase, and to pay a premium for, the Products.
78. Contemporaneous with filing this Complaint, Plaintiffs will provide Defendant with notice of its alleged CLRA violations in compliance with Cal. Civ. Code § 1782(a) and afford Defendant the requisite opportunity to cure. Plaintiffs seek injunctive relief under the CLRA in this Complaint and will seek leave to amend to add a claim for damages and restitution if Defendant fails to provide appropriate relief within the statutory period.
79. As a direct and proximate result of Defendant's violations of the CLRA, Plaintiffs Hood, Brand, and Walker and the California Subclass have suffered injury in fact and have lost money, and are entitled to injunctive relief, and upon expiration of the statutory notice period, to actual damages, restitution, punitive damages, and attorneys' fees and costs as provided by Cal. Civ. Code § 1780.

**COUNT II**

**Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.**

*(On Behalf of Plaintiffs Hood, Brand, and Walker, and the California Subclass)*

80. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

81. Defendant's conduct as alleged herein constitutes an unlawful, unfair, and fraudulent business act or practice within the meaning of Cal. Bus. & Prof. Code § 17200.

82. Unlawful Prong: Defendant's conduct is unlawful because it violates, among other laws: (a) the federal Food, Drug, and Cosmetic Act's implementing labeling regulations, 21 C.F.R. § 101.4(a)(1) and (b)(14), which require that fat and oil ingredients be declared by their specific common or usual name and prohibit listing an oil that is not actually present when oil is the predominant ingredient; (b) California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875, et seq., including § 110660 (prohibiting food labeling that is false or misleading in any particular) and §§ 110760 and 110765 (prohibiting the manufacture, sale, or delivery of misbranded food); and (c) the CLRA and FAL causes of action alleged herein.

83. Unfair Prong: Defendant's conduct is unfair because the harm it causes to consumers — paying a premium for Products represented to contain avocado oil that is not present to the extent represented — outweighs any conceivable benefit to Defendant or to competition, and because Defendant's conduct offends established public policy reflected in the federal and state food-labeling statutes cited herein. Defendant's conduct is further unfair because it deprives consumers who affirmatively seek to avoid seed oils of any practical means of doing so, and because consumers cannot detect the substitution through any means available to them.

84. Fraudulent Prong: Defendant's conduct is fraudulent because Defendant's avocado-oil representations were likely to deceive, and did deceive, members of the public acting reasonably under the circumstances.

85. As a direct and proximate result of Defendant's violations of the UCL, Plaintiffs Hood, Brand, and Walker and the California Subclass have lost money or property and are entitled to restitution and injunctive relief pursuant to Cal. Bus. & Prof. Code § 17203. Plaintiffs and the Class lack an adequate remedy at law with respect to the

equitable relief sought, and plead their equitable claims in the alternative to any legal remedies that may be available.

**COUNT III**

**Violation of the False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq.**

*(On Behalf of Plaintiffs Hood, Brand, and Walker, and the California Subclass)*

86. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

87. Defendant's labeling and advertising of the Products as containing avocado oil as the sole oil ingredient is untrue or misleading, and Defendant knew, or by the exercise of reasonable care should have known, that its representations were untrue or misleading, in violation of Cal. Bus. & Prof. Code § 17500. Defendant's knowledge is established by, among other things, the published scientific literature documenting widespread avocado oil adulteration predating the Products' sale, Defendant's own supplier-qualification and quality-control obligations, and Defendant's affirmative marketing representations regarding the purity of its oil sourcing.

88. Plaintiffs and Class members relied on Defendant's misrepresentations in deciding to purchase the Products and were thereby harmed.

89. As a direct and proximate result of Defendant's violations of the FAL, Plaintiffs Hood, Brand, and Walker and the California Subclass are entitled to restitution and injunctive relief.

**COUNT IV**

**Breach of Express Warranty**

*(On Behalf of All Plaintiffs and the Nationwide Class)*

90. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

91. Defendant's ingredient statements and front-of-package representations that the Products contain avocado oil as the sole oil ingredient constitute affirmations of fact and promises that became part of the basis of the bargain between Defendant and

Plaintiffs and Class members, and thereby created an express warranty that the Products would conform to those representations.

92. The Products did not conform to Defendant's representations, in that the oil fraction of the Products is inconsistent with authentic avocado oil, and Defendant thereby breached its express warranty.

93. Plaintiffs and Class members were not required to provide pre-suit notice of breach because doing so would have been futile and/or because Defendant had actual or constructive knowledge of the defect through, among other things, its own quality-control and supplier-verification processes and the widely publicized UC Davis Study; to the extent notice is required and has not already been satisfied, this Complaint, together with any pre-suit correspondence sent by Plaintiffs' counsel, constitutes such notice.

94. As a direct and proximate result of Defendant's breach, Plaintiffs and Class members did not receive the benefit of their bargain and suffered damages in the amount of the premium paid for the Products.

**COUNT V**

**Breach of Implied Warranty of Merchantability**

*(On Behalf of All Plaintiffs and the Nationwide Class)*

95. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

96. Defendant is a merchant with respect to the Products within the meaning of Article 2 of the Uniform Commercial Code as adopted in the relevant states, and the Products were subject to an implied warranty that they would conform to the promises and affirmations of fact made on their labeling, including that avocado oil was the sole oil ingredient.

97. The Products did not conform to their labeling because their oil fraction is inconsistent with authentic avocado oil, rendering the Products not merchantable and not fit for the ordinary purpose for which avocado-oil-labeled food products are used and sold, and Defendant thereby breached the implied warranty of merchantability.

98. As a direct and proximate result of Defendant's breach, Plaintiffs and the Nationwide Class suffered damages in the amount of the premium paid for the Products.

**COUNT VI**

**Unjust Enrichment**

*(Pleaded in the Alternative, on Behalf of All Plaintiffs and the Nationwide Class)*

99. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein, and plead this Count in the alternative to the extent an adequate remedy at law is found not to exist.

100. By virtue of the conduct alleged herein, Defendant received and retained money belonging to Plaintiffs and Class members — namely, the price premium attributable to Defendant's avocado-oil representations — under circumstances that make it unjust for Defendant to retain that benefit without paying the value thereof to Plaintiffs and Class members.

101. Plaintiffs and Class members are entitled to restitution and disgorgement of the unjust enrichment Defendant obtained as a result of its conduct.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Nationwide Class and California Subclass, respectfully request that the Court:

a. Certify this action as a class action, appoint Plaintiffs as Class Representatives, and appoint Plaintiffs' counsel as Class Counsel;

b. Enter judgment against Defendant on each of the causes of action alleged herein;

c. Award compensatory damages, restitution, and/or disgorgement to Plaintiffs and the Class in an amount to be determined at trial;

d. Award punitive damages to the extent permitted by law;

e. Enter an order enjoining Defendant from continuing to represent that the Products contain avocado oil as the sole oil ingredient unless and until that representation is true, and requiring Defendant to conduct and publicly report independent, periodic

authenticity testing of the Products' oil fraction using the fatty acid and sterol methods described herein;

f. Award pre- and post-judgment interest as allowed by law;

g. Award Plaintiffs' reasonable attorneys' fees, expenses, and costs of suit as permitted by the CLRA, the UCL, the FAL, and/or applicable law; and

h. Grant such other and further relief as the Court deems just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: August 17, 2026

EAGAN LAW CORPORATION

*By: /s/* Todd S. Eagan
TODD EAGAN
teagan@eagan.law
401 Wilshire Blvd., 12th FL.
Santa Monica, CA 90401
Ph: (310) 304-3302
Fax: (310) 304-3305

CAREY & DANIS LLC

*By: /s/* James J. Rosemergy
JAMES J. ROSEMERGY
(Mo. Bar No. 50166), *to be admitted Pro Hac Vice*
jrosemergy@careydanis.com
8235 Forsyth, Suite 1100
St. Louis, MO 63105
Ph: 314-725-7700
Fax: 314-721-0905

*Attorneys for Plaintiffs and the Putative Class*